IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GINA VANCAMP, *et al.* | * |
| *Plaintiffs,* | *   Civil Action No.: 24-3097 |
| vs. | * |
| BALTIMORE COUNTY, MARYLAND, *et al.* | * |
| *Defendants.* | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, by and through undersigned counsel, submit this Memorandum in support of their Motion for Summary Judgment.

**INTRODUCTION**

Plaintiffs bring both federal claims under 42 U.S.C. §1983 and various Maryland state claims against Baltimore County, Maryland ("County;" "Baltimore County") and Officer J. Trenary based on an encounter between Brian McCourry and members of the Baltimore County Police Department, including Detective Trenary, in January 2023. During this encounter, Detective Trenary shot McCourry after McCourry collided with a police vehicle numerous times, drove his vehicle towards police officers, and threatened the lives of others all while attempting to evade a lawful arrest. Plaintiffs allege state common law torts and the violation of McCourry's constitutional rights based on Detective Trenary's use of force against McCourry. Specifically, the Complaint alleges a common law battery claim against

1

Detective Trenary (Count I), an excessive force claim under 42 U.S.C. §1983 against Detective Trenary (Count II), a *Monell* claim based on excessive force against the County (Count III), a claim based on Article 24 and 26 of the Maryland Declaration of Rights against all Defendants (Count IV), a *Longtin* claim based on Article 24 and 26 of the Maryland Declaration of Rights against the County (Count V), a gross negligence claim against Detective Trenary (Count VI), and a wrongful death claim against both Defendants (Count VII).

## UNDISPUTED FACTS

In January 2023, detectives with the Baltimore County Police Department's Criminal Apprehension Support Team ("CAST") were surveilling vehicle driven by Brian R. McCourry, who had an outstanding warrant and was wanted for attempted first-degree murder and other violent crimes. (Exhibit A- Arrest Warrant). After McCourry parked his vehicle at a gas pump located at a Royal Farms gas station on the corner of Pulaski Highway and Ebenezer Road, the detectives attempted to block McCourry's vehicle into place by positioning six (6) unmarked police vehicles strategically around McCourry. (Exhibit B 06:43-06:49). Two of the officers activated their emergency lights and Defendant Trenary's police SUV struck the side of McCourry's vehicle at a slow speed. (Exhibit B 06:49-06:50).

Rather than complying with lawful orders, McCourry drove forward and struck Detective Depew's vehicle while Det. Depew was standing close by. (Exhibit B 06:52-06:55)[1]. McCourry then reversed his vehicle toward Sgt. Bakhsh, who was

---

[1] Exhibit B is security camera footage from the Royal Farms gas station located at the corner of Pulaski Highway and Ebenezer Road depicting the encounter between

2

standing behind him, then accelerated forward and, again, struck a Det. Depew's police vehicle while Det. Depew was standing near it. (Exhibit B 06:55-06:59). In response to McCourry's unpredictable and dangerous decision-making, Defendant Detective Trenary fired a single shot into the driver's side window of McCourry's vehicle. (Exhibit B 06:59). McCourry drove straight ahead, struck a curb, entered the intersection, and collided with a civilian's vehicle. (*See* ECF No. 1 at 3). McCourry was transported to a local hospital. *Id.* at ¶ 45. He died in March 2023. *See Id.* at ¶ 45.

## STANDARD OF REVIEW

Under Rule 56, summary judgment shall be granted when it appears that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Mere speculation by the non-moving party cannot create a genuine issue of material fact." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 197 F. Supp. 2d 669, 671 (D. Md. 1999). Put another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, No. 20-1583, 2022 WL 1672142, at *3 (4th Cir. May 26, 2022) (internal citations omitted). Further, courts use a two-step analysis to determine whether an officer is entitled to summary judgment on the basis of qualified immunity. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (*per curiam*). The first prong asks whether the facts,

---

Baltimore County Police and McCourry.

viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a federal right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second: whether the right in question was "clearly established'" at the time of the violation. *Tolan* at 655.

## SUMMARY OF ARGUMENT

Plaintiffs' battery claim against the Defendant Detective Trenary must fail because Detective Trenary acted reasonably and with legal justification and authority when he made contact with McCourry. Similarly, Plaintiffs claim under § 1983 cannot succeed because McCourry's constitutional rights were not violated and Defendant Trenary is entitled to qualified immunity. Further, Defendant Baltimore County is entitled to judgment on Counts II and V because the Complaint does not plausibly allege the County was the cause of any constitutional harm. As for claims under the Maryland Constitution, both must fail. Article 24 is inapplicable and, Defendant Detective Trenary did not violate McCourry's constitutional rights. Detective Trenary is also entitled to judgment on Count VI because he did not act with gross negligence and Plaintiffs did not sufficiently plead their gross negligence claim. Finally, both Defendant are entitled to judgment on Count VII because Detective Trenary did not proximately cause McCourry's death by negligence or other wrongful act.

## ARGUMENT

**I. PLAINTIFFS' BATTERY CLAIM MUST FAIL BECAUSE DETECTIVE TRENARY ACTED WITH LEGAL AUTHORITY AND JUSTIFICATION; THE CONTACT MADE WITH MCCOURRY WAS ALSO REASONABLE.**

4

A battery occurs "when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 355 Md. 593, 600 (1999). Battery can occur only "when there is no legal authority or justification for the arresting officer's actions." *Hines v. French*, 157 Md. App. 536, 551 (2004) (internal citations omitted). Thus, an officer cannot be liable for battery when he uses a reasonable amount of force to effectuate a lawful arrest or detention. *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 383 (D. Md. 2018) (internal citations omitted). And here, the officers had legal authority to arrest McCourry, given there were an active warrant for his arrest for attempted murder in the first degree. Exhibit A.

As for the reasonableness of an officer's use of force under the Fourth Amendment, the Supreme Court's opinion in *Graham v. Connor*[2] serves as the starting point. In *Graham*, the Supreme Court recognized that officers may use reasonable force to effectuate arrests and that the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. A court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. The application of this "reasonableness test" "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

---

[2] 490 U.S. 386 (1989).

attempting to evade arrest by flight." *Id.*; *see Tennessee v. Garner*, 471 U.S. 8–9 (1985) (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure"). To that point, the Supreme Court has acknowledged that all arrests are presumed dangerous for officers because "[t]here is no way for an officer to predict … how a particular subject will react to arrest or the degree of [any] potential danger." *See United States v. Robinson,* 414 U.S. 218, 235, n.5(1973); *Washington v. Chrisman*, 455 U.S. 1, 7 (1982). Moreover, the Supreme Court has found it to be constitutionally reasonable for an officer, who "believe[s] that [a] suspect poses a threat of serious physical harm, either to the officer or to others … to prevent escape by using deadly force." *Garner* at 11.

    Here, Detective Trenary's use of force was objectively reasonable given the increasing threat McCourry posed to other officers and others. McCourry, who was wanted for attempted murder and, to Detective Trenary's knowledge, could have been armed with a gun, exhibited dangerous behavior when members of CAST attempted to arrest him at the Royal Farms gas station. Despite the CAST officers' efforts to quickly block McCourry's vehicle using six police vehicles (two of which had their lights activated), McCourry did not yield. Instead, he attempted to evade arrest by driving his car into Detective Depew's vehicle (while Det. Depew was near it), reversing back towards Sgt. Bakhsh, and striking Detective Depew's vehicle again. His unlawful actions were made without regard to human life and presented an immediate threat to the safety of not only the officers involved, particularly Depew and Baksh, but also any member of the public frequenting the gas station

6

that morning. In response to this unpredictable, deadly threat, created by the actions of an individual whom officers could reasonably have expected to be armed, Detective Trenary fired one, single shot into the driver's side window of McCourry's vehicle.[3]

Detective Trenary's use of force was limited only to addressing the imminent danger posed by McCourry. It was to proportionate, lawful, carried out solely to mitigate the risk of harm to Baltimore County officers as well as members of the community and, importantly, reasonable under *Graham*. As a result, Plaintiffs' battery claim must fail.

## II. PLAINTIFFS' § 1983 CLAIM MUST FAIL BECAUSE DETECTIVE TRENARY USED REASONABLE FORCE.

For the reasons explained above, Detective Trenary's use of force was reasonable under the Fourth Amendment, and pursuant to the principles of *Graham v. Connor*. Additionally, when an officer uses deadly force against a fleeing driver, if the police officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others" the officer does not violate that driver's Fourth Amendment rights. *Henry v. Purnell*, 652 F.3d 524, 531–32 (4th Cir. 2011) (quoting *Garner*, 471 U.S. at 3). Here, Detective Trenary had such probable cause given that (1) McCourry was wanted for two shootings; (2) it was not known whether he was armed; (3) he twice struck a

---

[3] In addition to arrest warrants, arrest of McCourry was lawful once he committed a crime in the officer's presence, by striking police vehicles with his car. *See Pacheco v. State*, 465 Md. 311, 322 (2019).

police vehicle instead of simply cooperating with officers seeking to arrest him (4) all while at a convenience store in close proximity to gas pumps. Additionally, Detective Trenary's decision to fire a single shot was made in a split second, mere moments after McCourry collided with a police vehicle for the second time. (Exhibit B 06:59).

### III. DETECTIVE TRENARY IS ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity is a judicially-recognized doctrine that protects government officials, including police officers, "from liability for civil damages [when] their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When assessing whether qualified immunity applies, a court must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) …whether that constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

For a right to be considered "clearly established" it "must be [so] sufficiently clear 'that every reasonable [police officer] would [have understood] that what he is doing violates that right.'" *See Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal citation omitted). And, there must be *existing* precedent which places "the . . . constitutional question [as to whether that right exists] beyond debate." *Id*. (emphasis added). The Supreme Court has further explained that "clearly established law" means law "particularized" to the facts of a given case. *White v.*

8

*Pauly*, 137 S.Ct. 548, 551 (2017) (*per curiam*). In the context of the Fourth Amendment, this particularization is especially important because "it is sometimes difficult for an officer to determine how [] relevant legal doctrine … will apply to the factual situation the officer confronts." *Saucier* at 201. Because of this difficulty, qualified immunity functions "to protect officers from the sometimes hazy border between excessive and acceptable force …." *Saucier* at 206 (internal citations omitted).

Applying the two-prong test, it is clear that Detective Trenary is entitled qualified immunity. Under the first prong, which examines whether the facts alleged by Plaintiffs constitute a constitutional violation, Detective Trenary's use of force was not constitutionally unreasonable nor in violation of McCourry's Fourth Amendment rights, as discussed in the preceding section. Additionally, for the second prong, no case law particularized to the facts of this case exists to "clearly establish" a constitutional right to be free from seizure while actively fleeing from law enforcement in a vehicle, repeatedly striking police cars, and posing a threat to officers and the public, especially when there is uncertainty about whether the suspect is armed. To the contrary, there is case law from other circuits to support that no constitutional violation occurs when an officer shoots a fleeing suspect who presents a risk to others. *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) (holding the police officer "had probable cause to believe that the truck posed an imminent threat of serious physical harm to innocent motorists as well as to the officers themselves"); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (recognizing "a car

9

can be a deadly weapon" and holding a police officer's decision to stop the car from potentially injuring others was reasonable). Because no case law existed in January 2023 (or now), that put Detective Trenary on notice that firing a single shot in a rapidly unfolding situation was constitutionally impermissible and, instead, case law existed to support the opposite, qualified immunity must apply.

### IV. BALTIMORE COUNTY IS ENTITLED TO JUDGMENT ON COUNT III AND COUNT V BECAUSE THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT THE COUNTY CAUSED ANY CONSTITUTIONAL VIOLATION.

For a *Monell* claim, liability may only attach when a local government *itself* causes a constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). A plaintiff claim must adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). The plaintiff "must [also] allege numerous particular instances of unconstitutional conduct in order to establish a custom or practice, because 'a municipality is not liable for mere isolated incidents of unconstitutional conduct by subordinate employees.'" *Weeden v. Prince George's Cty.*, No. 17-2013, 2018 WL 2694441, at *4 (D. Md. June 4, 2018) (quoting *Smith v. Ray*, 409 F. App'x. 641, 651 (4th Cir. 2011). These "particular instances" must be instances of similar conduct. *Talley v. Anne Arundel Cty.*, No. 21-347, 2021 WL 4244759, at *14 (D. Md. Sept. 17, 2021); *Kline v. Wicomico Cnty.*, No. CV BPG-21-2653, 2022 WL 1538625, at *5 (D. Md. May 16, 2022) ("plaintiffs here did not allege any similar facts . . .") C*orbitt v.

10

*Balt. City Police Dep't*, RDB-20-3431, 2022 WL 846209 (D. Md. March 22, 2022) (plaintiff plausibly alleged *Monell* claim by alleging multiple instances in which defendant committed similar violations); *Ramirez v. Escajeda*, 298 F. Supp. 3d 933, 943 (W.D. Tex. 2018) ("Plaintiffs have offered eight similar instances from 2013 to 2016 with specificity and statistics supporting their claims of a custom. This is sufficient to plausibly state a custom that satisfies the first element of the *Monell* claim.") *Murray v. Admin. for Children's Servs.*, 476 F.Supp.2d 436, 442 (S.D.N.Y.2007), *aff'd*, 293 Fed. Appx. 831 (2d Cir.2008) ("The [plaintiff] does not allege other similar instances of malicious prosecution that could raise an inference that the City maintains a policy or custom of deliberate indifference to these types of constitutional deprivations.")

Furthermore, and as this Court has explained, a *Monell* claim cannot survive "when there is no underlying constitutional violation by an employee." *Johnson v. Baltimore Police Dep't,* 500 F. Supp. 3d 454, 459 (D. Md. 2020) (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1996 (*per curiam*) ("[N]either *Monell* … nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when the jury has concluded that the officer inflicted no constitutional harm.") Importantly, a *Longtin* claim, will fail where a *Monell* claim fails. *Palma v. Montgomery Cnty., Maryland,* 598 F. Supp. 3d 288, 297 n. 5. (D. Md. 2022); *Krell v. Queen Anne's Cnty.*, No. CV JKB-18-637, 2018 WL 6523883, at *15 (D. Md. Dec. 12, 2018). That is because *Longtin* claims are

11

Maryland's version of *Monell* claims. *Rosa v. Bd. of Educ. of Charles Cnty., Md.*, No. 8:11-CV-02873-AW, 2012 WL 3715331, at *9 (D. Md. Aug. 27, 2012).

Plaintiffs have failed to adequately plead instances of similar conduct. Of the instances listed within their Complaint, none are factually similar to the matter at hand. (Ec. Only one of the incidents cited by the Plaintiffs even involves a vehicle, and none relate to a fact pattern where a criminal suspect, who may be armed, attempted to flee in a car while simultaneously striking law enforcement vehicles repeatedly. (ECF No. 1 ¶ 85). Plaintiffs also allege a *Monell* claim based on the County's purported "failure to train." (ECF No. 1 ¶ 99). However, they provide only one citation to an alleged similar incident (which is still in the midst of litigation). Even if this incident were similar, liability based on a single incident is not appropriate under *Monell*. *Krell* at *16 ("the Supreme Court in *Canton* hypothesized single-incident liability in the context of the failure to train theory but has since declined to utilize it, maintaining its conclusion that 'a pattern of violations is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.'").

Turning to the stated constitutional harm, as detailed throughout the preceding sections, Detective Trenary used reasonable force and did not commit a federal or state constitutional violation. Consequently, the County is entitled to judgment on Count III (*Monell* claim) and Count V (*Longtin* claim).

> **V. PLAINTIFFS' ARTICLE 24 & ARTICLE 26 CLAIM(S) MUST FAIL BECAUSE ARTICLE 24 IS INAPPLICABLE AND DEFENDANT DETECTIVE TRENARY DID NOT VIOLATE MCCOURRY'S CONSTITUTIONAL RIGHTS.**

Article 24 of the Maryland Constitution is not the proper means by which to bring an excessive force claim. *Barnes v. Montgomery Cnty., Md.,* 798 F. Supp. 2d 688, 700 (D. Md. 2011). Article 26, which protects the right to be free from unreasonable seizures, as opposed to substantive due process rights, is the appropriate vehicle for use of force claims. *Id.* (internal citations omitted). Accordingly, "Article 26 is in *pari materia* with the Fourth Amendment and … decisions of the Supreme Court interpreting the Federal right are entitled to great respect in construing the State counterpart." *Richardson v. McGriff*, 361 Md. 437, 452–53 (2000) (internal citations omitted). Because of this, the *Graham* "reasonableness test" applies to Article 26 claims. *See Id.* at 452.

As laid out in the above sections, Detective Trenary acted reasonable under *Graham* and given the totality of the circumstances. Detective Trenary cannot be found liable under Article 24 or Article 26.

## VI. DEFENDANT DETECTIVE TRENARY IS ENTITLED TO JUDGMENT ON COUNT VI BECAUSE HE DID NOT ACT WITH GROSS NEGLIGENCE.

Gross negligence is an "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Stracke v. Est. of Butler*, 465 Md. 407, 420–421 (2019) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007). "Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Barbre*, 492 Md. at 187 (quoting *Liscombe v. Potomac Edison*

13

*Co.*, 303 Md. 619, 635 (1985)). A claim for gross negligence "sets the evidentiary hurdle at a higher elevation[.]" *Stracke*, 465 Md. at 421 (quoting *Beall v. Holloway-Johnson*, 446 Md. 48, 64 (2016)). A claim of gross negligence needs to be plead with specificity. *Khawaja v. Mayor & City Council, City of Rockville*, 89 Md. App. 314, 318 (1991) (citing *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 168 (1972)). To do so, a plaintiff "must [plead] *facts* showing that [the defendant] acted with a wanton and reckless disregard for others." *Boyer v. State*, 323 Md. 558, 579 (1991) (emphasis in original). "Only conduct that is of an extraordinary or outrageous character will be sufficient to supply the requisite state of mind. *Khawaja* at 319.

Here, none of the allegations contained within the Complaint rise to the level of gross negligence. Instead, where this count is alleged in the pleading, Plaintiffs simply state that Defendant Detective Trenary "acted recklessly with gross negligence and/or malice when he breached his duty to Mr. McCourry." Complaint at ¶139. Because Plaintiffs fail to apply case-specific facts to any legal authority relating to gross negligence, Defendant Detective Trenary is entitled to judgment.

### VII. DEFENDANTS ARE ENTITLED TO JUDGMENT ON COUNT VII BECAUSE DETECTIVE TRENARY DID NOT PROXIMATELY CAUSE MCCOURRY'S DEATH BY NEGLIGENCE OR OTHER WRONGFUL ACT.

Under Maryland law, to plead a wrong death claim, plaintiffs must allege

> "(1) the victim's death; (2) that the victim's death was proximately caused by the negligence [or other 'wrongful act'] of the defendant; (3) that the victim's death resulted in injury to the plaintiff, who falls within the category of beneficiaries defined by the statute; and (4) that the claim is brought within the applicable statutory period."

*Willey v. Bd. of Educ.*, 557 F. Supp. 3d 645, 670 (D. Md. 2021). A "wrongful act" is

14

defined by Maryland's Wrongful Death Act as "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued." Md. Code Ann., Cts. & Jud. Proc. § 3-902.

As explained throughout the aforementioned sections, Defendant Detective Trenary did not commit any wrongful act—the torts alleged in the various counts—against McCourry. Because Officer Trenary's use of force was reasonable, and He thus did not commit "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued," he and is therefore entitled to judgment on Count VII.

## CONCLUSION

For the reasons stated, the Defendants are entitled to judgment on all claims.

Respectfully submitted,

**James R. Benjamin, Jr.**
County Attorney

/s/
_____
Alek J. Stathakis
Bar No.: 31317
Assistant County Attorney
Baltimore County Office of Law
400 Washington Avenue
Towson, Maryland 21204
(410) 887-4420
astathakis@baltimorecountymd.gov

15